## HOLCOTE TERRELL *v.* JOSIAS CHAMBERS.

The decisions of the Register of the Land Office and Receiver of Public Moneys in Louisiana, in relation to confirmed land claims which may conflict or interfere with each other, under the powers conferred by sixth section of the act of Congress of 3 March, 1831, are not binding on the parties. The act does not take from the courts the right of investigating and deciding on such claims, after those officers have acted thereon.

APPEAL from the District Court of Rapides, *Campbell,* J.

*Hyams,* for the plaintiff.

*Brent* and *O. N. Ogden*, for the appellant.

GARLAND, J. This is an action to recover a portion of land, to quiet the plaintiff in his possession, to establish a boundary, and to recover damages for slander of *title* and trespass. The case was before the court at the October term, 1838, (12 La. 582,) and was remanded for a new trial. The question of title was not considered by the court, although acted on below—that of damages being most prominent. The consequence was, that the whole judgment was reversed, although there was no doubt about the title being in the plaintiff.

On the 21st of January, 1819, at the sale of the community property of Abraham Martin and wife, made by order of the Court of Probates, Walter Turnbull became the purchaser of two tracts of land on the left bank of the bayou Robert, one containing 200 *arpens*, purchased from Jeremiah Dowd, the other containing 400 *arpens*, purchased from Patrick Gurnett. At a Sheriff's sale, made on the 6th of March, 1823, John Towles purchased the whole tract of land, under an execution in favor of Mrs. Matilda A. Turnbull, which purchase was for the use and benefit of the latter. On the 19th June, 1824, M. A. Turnbull, authorized and requested Towles to convey to Nathaniel Cox, so much of the land, including the dwelling house and gin, as would be sufficient to pay a debt to him owing by her husband, estimating the improvements at $4500, and the land at $15 per *arpent*. On the 21st of October, 1826, Towles sold William Miller 300 *arpens*, more or less, stating it to be bounded above by the land of Baldwin, and below by that of Nathaniel Cox. This sale Mrs. M. A. Turnbull ratified two days after. The sale from Towles to Cox was not made until May 14th, 1827, in conformity with Mrs. Turnbull's authorization, dated in June, 1824. He then conveyed 294⅓ *arpens* of the land, without saying how it was bounded. Miller sold the portion of the land he purchased to Carnal, who sold to the plaintiff and described it as being bounded below by the estate of Harvard. Cox, on the 9th December, 1828, sold to John Harvard, the land purchased of Towles. At the sale of Harvard's estate, on the 13th January, 1830, Chambers purchased the Cox tract, which is stated to be bounded above by the land of Terrell. On the same day, the defendant

purchased another tract of Harvard's estate, which is described as beginning at a gully on the bayou, being the lower corner of the Cox tract, thence running down the bayou to the lower corner of the gin lot, so as to include the gin, thence running out to the back line of the whole tract, so as to include the quantity of 690 *arpens*, more or less, being one-half of the tract purchased of McCrummen. On the same day, the defendant purchased another below the last one, containing the same quantity, being the other half of the McCrummen tract. In the sale from McCrummen to Harvard and Calliham, dated in October, 1823, the land of Turnbull is stated to be the upper boundary.

The defendant claims, that his titles cover all the land owned by Terrell. He alleges, that he is entitled to the whole of the Turnbull tract sold by Towles to Miller and Cox, although he owns but the portion purchased of Cox. He claims the land in this mode, because he has, by some means, obtained from the Register of the Land Office at Opelousas, one or more patent certificates, in which it is stated, that he, as the assignee of Abraham Martin, has been confirmed as owner of the tracts claimed under Gurnett and Dowd. These certificates, it is pretended, were obtained in consequence of some proceeding instituted under the 6th section of the act of Congress, passed in 1831, authorizing the Register and Receiver to pass upon conflicting claims and boundaries. 2 Land Laws, 294. By that act, courts of justice are not precluded from investigating and deciding upon such claims, after the Register and Receiver have acted. The defendant does not produce any chain of title from Abraham Martin, except for the 294⅓ *arpens*, which he holds under Harvard, which are situated above the gully. For the lands below the gully, he traces his title no further back than to McCrummen. It seems, that the quantity sold in the two lower tracts by Harvard is deficient; and it is shown, that the defendant claimed and had a large deduction made from the price in consequence of it. He now wishes to push the Cox tract up to Terrell, and then bring up his other tracts, so as to get the quantity his deeds call for.

The District Court decided against him, and he has appealed. We do not think the court and jury erred. We do not see a

shadow of claim, that the defendant has to more than $294\frac{1}{3}$ *arpens* of land above the gully, commonly called the Supreme Court gully, having such a front as, by the depth of forty *arpens*, will give that quantity. The recital in the certificate of confirmation, of his being the assignee of Abraham 'Martin, is not binding on the plaintiff, without a production of titles.

The question now before us seems to have been correctly settled in the case of *Turnbull & Cureton*, 9 Martin, 41. The gully was then fixed as the lower boundary of Gurnett's tract, and the upper limit of the Tear tract.

<div align="right">

*Judgment affirmed.*