BREAUX, C. J.
This is an action sounding in damages in the sum of $5,000 for malicious prosecution.
The manager of the defendant company, under the direction of one of its owners, made an affidavit against plaintiff charging him with the embezzlement of $38.
Wiener was one of the owners of the defendant company. Loeb was the other.
The plaintiff was arrested in one of the streets of the city of Shreveport, and kept under arrest for a short time until he furnished bond.
He was one of the drivers of the defendant laundry company.
The laundry was delivered to the drivers, and each driver was charged with that which he received, and settlements were made therefor on Saturday nights.
Defendants employed a number of drivers', among them plaintiff, until recently, to drive their laundry wagons, and receive and deliver clothing and collect amounts for the company.
■ Plaintiff’s employment dates back to January, 1906.
" On one of the Saturdays during his employment, plaintiff failed to account to the employers’ satisfaction. On the day following the employer who had charge and the manager consulted together. That was not the first shortage in plaintiff’s account it appears. Both the manager and Wiener testified that he had been short before. The result was that the manager was instructed to make an affidavit against plaintiff. On July 18, 1906, the affidavit was made.
The plaintiff having paid the alleged deficiency in the account, there was a disposition on the part of the state not to prosecute, but the defendant insisted upon .a preliminary hearing, which was had on August 1st of the same year.
The district judge, before whom the preliminary trial was heard, discharged the plaintiff.
The facts are, as developed on the preliminary hearing, and afterward on the trial: That the plaintiff, instead of settling in full on the Saturday night before referred to, stated that he had lost $20, and, after losing the $20 (if lost), the plaintiff alleged that his account showed as follows on the Monday following;
Laundry to be delivered charged to Kirk, together with overdraft of week before $65 55
Special delivery work to be delivered Monday by Kirk, charged his account 4 20
$69 75
Less credit of bundles of laundry undelivered by- Kirk and returned to laundry . 31 25
$38 50
In his petition plaintiff alleged that the money charged to have been embezzled was *823 made up of laundry bills due-by patrons of tbe laundry company, and, “at tbe most, was only an overdraft concurred in by defendant, together witb $20” that be lost while getting in and out of bis wagon delivering and collecting.
Tbe plaintiff, as a witness in tbe present case, said that tbe four bills representing tbe amount lost bad fallen out of bis pocket, “worked out,” to quote bis words, and that there was no bole in tbe pockets of bis pants.
Plis attention was then called to tbe fact that previously on the preliminary trial be bad testified that tbe bills had slipped out through a bole in his pants pocket.
His answer was that, if be bad made such a statement, it was unintentional, and was incorrect.
It is in place to state in regard to the dates that tbe defendant owner — that is, Wiener— swore that it was on the Sunday previous to tbe arrest that be directed that an affidavit be made against plaintiff. Tbe affidavit was made on Monday, and tbe arrest on Tuesday.
Tbe matter of dates has some bearing, as will appear later.
This, owner of tbe defendant laundry also testified that he did not believe the story related by the plaintiff as to the loss of tbe $20.
Before the affidavit had* been made, Wiener called on tbe district attorney, and laid tbe facts before him. That officer, after bearing tbe statement, advised him to make tbe affidavit.
A few days thereafter defendant heard that it was tbe intention of plaintiff to pay tbe amount of his shortage.
Wiener, owner, for defendant, called on tbe officer before named, and asked him whether or not be should accept. The officer’s answer was that tbe criminal and civil proceedings were distinct — one did not bar tbe other— that, if the plaintiff wanted to make a settlement, it was proper enough to accept it, provided the defendant did not enter into a compromise and agree to dismiss tbe criminal proceedings.
This is stated for tbe reason that one of the grounds of plaintiff is that defendant resorted to tbe criminal court in order to bring to bear a criminal prosecution to enable it to collect tbe money; that is, that it would thereby coerce payment.
Another of plaintiff’s contentions is that defendant in instituting prosecution through its officers and agents was actuated by spite. Tbe following was seized upon to maintain that position
Plaintiff bad failed to settle, as before stated. There was a strike among tbe employes of defendant, of which strike plaintiff says, in substance, it was believed by bis employer that be, plaintiff, bad organized it, and that bis leadership in this matter of strike bad very much displeased tbe defendants and bad prompted them to make tbe charge.
Another asserted grievance of defendants, as plaintiff contends, was that be was seen a few days after be was no. longer working for defendant driving tbe wagon of another laundry which was a competitor of defendant; that it was only then that his arrest was specially suggested by the manager.
Tbe foregoing are salient points of tbe testimony. There are incidents also growing out of the contradiction of witnesses. Plaintiff and two of the witnesses testified that the manager said that the purpose was to annoy and punish plaintiff for engaging in a strike and for taking service in a competing company; that Wiener had talked about plaintiff and the strike. Wiener and the manager are emphatic in their denial.
Tbe case was tried before a Jury, and the appellant, Kirk, was awarded the sum of $1,500 damages.
The defendant company asked for a new trial, which was granted.
By consent of counsel for both sides a jury *825 was waived after the judge had granted a new trial, and the ease was submitted to the court on the evidence already adduced.
The judge rendered judgment in favor of defendant, from which the plaintiff appeals.
That his acquittal by the district judge at the preliminary trial was prima facie evidence of the want of probable cause is the first proposition of plaintiff.
That proposition loses much of its force by reason of the fact that the learned judge who presided at the preliminary trial and acquitted the accused was the presiding judge at the trial before jury. Having heard the testimony from the first, having seen the witnesses while they testified, observed their manner of testifying, the trial judge arrived at the conclusion when the case was submitted to him after the jury had been discharged that plaintiff was without right to damages. He must have concluded that the charge of malice and the want of probable cause was not proven.
Next, the issue relating to the $20.
On examining the testimony, we found the contradictory statement of the plaintiff regarding the loss of the $20 in question. It occurs to us that the fact that he could not account should have impressed itself sufficiently on plaintiff for him not to make a mistake in accounting for the loss. The difference between bank bills falling out of one’s pocket from the top, or of bills slipping through a hole in the pocket, is quite marked. The average man would not likely immediately after the loss trace it to a hole in his pocket, if the pocket did not have a hole in it. Afterward — that is, after having sworn that there was a hole in his pocket — the contradiction in the testimony of this witness was direct. He not only testified that the bills did .not slip through a hole in his pocket, but that there was no hole in his pocket.
In reference to the spite which prompted defendants, as plaintiff charges, the contention in this respect evidently did not impress the judge a quo. It has not impressed us, for, after close attention, we have not found that the contention is sustained to an extent that would justify us in setting aside the judgment and in allowing damages. The facts and the circumstances do not connect the making of the affidavit with arrbst and the strike, or with any spite. The strike does not seem to have been sufficient to cause any great anger or to cause spite. There was nothing very serious, as we infer. There was some difference about the amount of wages, and one or two of the workmen said that if the wages were not increased they would leave, and that was all. The difference was settled — compromised—in a very short time after the employés asked for an increase of wages. The time of the strike was about half an hour.
Two of the witnesses, as mentioned in our above statement :of the facts, stated that the manager, and the part owner before named, had by their remarks shown that they were actuated by spite, or a desire of annoying plaintiff, or, possibly, by an overanxiety to collect their money.
The testimony of these witnesses is not of the strongest. It was very much weakened by the fact that one of the witneses had himself been in arrears with his employers. The other witness testified, in general terms, in regard to the statement made by the defendants. Besides, this witness’ testimony only referred to Autrey, manager, who had no right as manager to bind the defendant or its owners.
The judge did not take their testimony as controlling. Neither do we.
The manager testified, and the part owner, that the affidavit was made because plaintiff failed to make settlement, and because it was thought that he had made away with the money.
From all indications it does not appear that *827 there was not at the time some cause for thus concluding, particularly in view of the facts and circumstances of the case.
To return for a moment to the strike (the date on which the defendants determined to prosecute) the fact that the district attorney was consulted before they had become aware that there was a strike goes far toward substantiating the position of defend-, ants as relates to the object of the prosecution. It is in place to state that the strike was on Monday morning about the time that Wiener called on the district attorney. It does not appear that he knew of the strike at the time.
But says plaintiff at another time the collection of the amount was the object, and plaintiff calls attention to the payment made by him to the defendant.
We have noted before that payment was accepted in accordance with the advice of the district attorney. Further, the mere fact of payment, as stated, may have gone very far in obtaining the acquittal at the preliminary trial. In accepting payment no promise was made of any kind by the defendant: The fact, under the circumstances, could not have been invoked as showing that the defendant had entered into a compromise, because it had not. The payment under the facts and circumstances can be well considered as a set-off. Plaintiff’s position in this respect is to be considered in the light that he had not admitted that he had committed the crime, it only meant to pay the amount, and, on the other hand, it is not to be construed for defendant as an admission that he did not think that the crime charged had not been committed.
There is nothing in the manner of the arrest which shows the spite which plaintiff charges. Attention was calledto the fact that plaintiff was driving the wagon of another company. The facts are about thus: The manager telephoned to the police officer that plaintiff would be found driving the wagon in question. There is nothing in this showing that it was because he was driving the wagon that the - defendant acted as he did. The parties had determined to prosecute. Affidavit had been made before the plaintiff was seen on the wagon of defendant’s rival in business. Nothing remained to be done save to arrest the party.
This brings us to a consideration, of the question: Was there malice and probable cause?
We will state that, if defendants were moved by malice and acted without probable cause, plaintiff has a right of action for damages. But, if these were not the moving causes, there is no ground for damages.
But, to begin under this head, there was failure to account under circumstances calculated to awaken suspicion of the employer. It is certainly not evident that the process was resorted to wrongly or unlawfully for a purpose other than shown by the papers. That is for alleged embezzlement.
The ulterior motive charged is wanting as an element to make out a cause. The legal proceeding was none other than proper if the suspicion was well grounded.
But here plaintiff’s contention is that defendant did not fully and fairly state the case to the prosecuting officer.
This is not borne out by the officer who testified that all the facts in the case were properly placed before him at the time that his advice was sought and obtained. This officer heard the witness who sought his advice testify on the preliminary examination, and he (the prosecuting officer) on the trial of the case testified that he had been correctly informed as to the facts. In fact, both the owners, Wiener and Autrey, manager, consulted the district attorney. We are not of opinion that they intentionally withheld any fact bearing upon the case.
Malice is necessary to constitute a cause of *829 action in the premises. One who expects settlement of an amount collected for his account, and meets, instead, with statement from an employé which does not to his mind hear the stamp of truth, and repairs to the prosecuting officer and lays the case before him in all of its details, and is advised to bring on a judicial inquiry before the criminal court, thereby does not necessarily show a disposition to wrong and malice.
It is charged by plaintiff that defendant did not make a full statement to the prosecuting officer, because he did not inform him of the strike nor of the fact that Kirk was seen on a rival wagon.
Neither of these facts is an element in the case, and we have found nothing in the evidence which rendered it necessary for the defendant to make this statement to the officer. In fact, one of the parties testified that he did not know of the strike at the time that he called on the officer, and there is nothing to contradict his direct statement in this respect.
This case falls within the rule laid down in Womack v. Fudikar, 47 Ann. 36, 16 South. 646, in which the court said:
“It therefore appears that the disclosure of defendant to his counsel was not misleading, and that the facts were not withheld from him.”
The case does not fall within the rule laid down in King v. Erskins, 116 La. 480, 40 South. 844, in which the court held:
"In any event, they acted precipitately.*** It is not shown that the correctly informed as to the facts."
Not the case here.
It was shown in the last cited case that the district attorney had not really advised the action which had been taken.
The advice of the district attorney or of counsel cannot and should not be taken as a shield for an improper act m matter of a criminal prosecution. This could not for a moment be sanctioned. If all of the circumstances showed that the advice of attorney was sought and obtained in good faith, although a plaintiff may succeed in proving his complete innocence at the time steps were taken for his arrest and prosecution, the parties cannot very well be held to have been actuated by malice. To rebut malice, it must be shown that he communicated to counsel “all the facts bearing upon the guilt or innocence of the accused of which he had knowledge or by reasonable diligence could have ascertained.” 33 Am. Digest (Century Ed.) p. 1839, § 42, letter “a.”
The advice in the case before us for decision was sought by defendant, as we take it, in good faith.
In the paragraph following from the same work is the following:
“In an action for malicious prosecution, defendant is not liable if it appears that he had laid all the facts before the attorney in good •faith, and that he acted upon opinion given by such attorney, though such opinion is erroneous.”
This quotation is sustained by a number of decisions of the courts of last resort of a number of the states.
Again, if the advice of a respectable ‘practicing attorney, fully informed, is a valid defense, the advice of the district attorney who testified that he would have taken the oath himself in the absence of plaintiff as to probable cause that of the prosecuting officer has at least, as much, if not greater, weight.
The evidence of plaintiff as to want of probable cause is entirely rebutted by the showing made.
For reasons stated, the judgment is affirmed.
MONROE and PROVOSTY, JJ., dissent.