CRAIN, Judge.
This appeal is from a judgment of the trial court which dismissed Laurel Lea Shopping Center’s (Laurel Lea) rule to evict Micro Mall, Inc. (Micro Mall) for an alleged breach of their lease agreement.
Laurel Lea leased to Micro Mall a portion of Laurel Lea Shopping Center located at 8821 Highland Road, Baton Rouge, Louisiana. The monthly rental was set at $1,200.00, payable on or before the first day of each month.
On February 1, 1983, Micro Mall tendered a check in the amount of $933.40 along with a paid invoice from Modern Electric Company in the amount of $266.40. This invoice represented the cost of labor and material to replace six ballasts in the lighting system as requested by Micro Mall.
Laurel Lea subsequently filed suit for past due rent, to rescind the lease and to evict alleging the lease agreement was breached as a result of Micro Mali’s failure to timely pay the rent due for February. Laurel Lea had originally named only Jesse Joe Parker and Carl Stevenson, owners of Micro Mall, as defendants, however, by amending petition, Micro Mall was made an additional defendant, and the individual defendants were dismissed by summary judgment.
Laurel Lea alleges the trial court erred in allowing Micro Mall to deduct the cost of replacing the six ballasts from the February rent. Specifically, Laurel Lea argues that the repairs were not “indispensable” or “necessary” repairs within the meaning of La.C.C. art. 2694.
The essence of the contract of lease is the enjoyment of a thing in exchange for a price. La.C.C. art. 2669. The lessee is bound to use the thing as a good administrator, for the intended use, and to pay the rent on the agreed terms. La.C.C. art. 2710. The lessee may be expelled from the property by failing to pay the rent when due. La.C.C. art. 2712. However, La.C.C. art. 2694 provides an exception to the general rule that the lessee may be evicted for failure to timely pay the full amount of the rent as stipulated by the lease. That article allows a lessee to repair at the lessor’s expense those things which the lessor is required to repair, and to deduct the cost of those repairs from the rent due. It provides in part as follows:
If the lessor do not make the necessary repairs in the manner required ... the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable.” (emphasis added).
Shell v. Banks, 8 Rob. 168 (1844) continues to be the leading judicial interpretation of La.C.C. art. 2694. See also Lake Forest, Inc. v. Katz & Besthoff, 391 So.2d 1286 (La.App. 4th Cir.1980). In that case the Louisiana Supreme Court set out three prerequisites to the lessee’s use of La.C.C. art. 2694. First, the lessee must call upon the lessor to make the repairs and thereby put the latter in default of his obligation to repair. Second, the lessee must show the repairs are indispensable. And finally, the lessee must, in fact, make *824 the necessary repairs neglected by the defaulting lessor, and prove that the price paid for making the repairs is just and reasonable.
At the hearing, there was testimony from both parties explaining the arrangement of the flourescent lights in the mall and how the non-operating lights affected Micro Mali’s business operations. Carl Stevenson, part owner of Micro Mall, testified that the building is forty feet wide and one hundred feet long with three rows of flour-eseent lights running the length of the building and one row across the front. Mr. Stevenson testified that six of the twenty-eight lights were not functioning and that the lights that were out were located mainly in the center row over the aisle.
V.J. Gianelloni, president of Laurel Lea, also testified that the non-operating lights were in the center row over the walkway.
'Jesse Joe Parker, part owner of Micro Mall, and Mr. Stevenson gave testimony concerning how the malfunctioning lighting system affected their business operations. Mr. Parker, after noting that Micro Mall retailed antiques, testified that due to the lights being out, the rear of the building which was used for work and storage was almost unusable and that the front area was dimmed to such an extent that the other antique sellers in the mall were complaining. Mr. Stevenson testified that the business operations were affected “to the extent that you couldn’t see. The public doesn’t like it if you are poorly lit, they can’t see the merchandise, they can’t see the prices on the merchandise.” Additionally, the problem occurred during the Christmas season when the lessees expected to do more business than any other time during the year.
After reviewing the evidence and testimony presented at trial, we find that trial judge’s factual finding that these repairs were “indispensable” repairs within the meaning of La.C.C. art. 2694 was not manifestly erroneous. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Laurel Lea alleges the trial court erred in finding that it “neglected” to make the repairs in accordance with La.C.C. . art. 2694.
There is no evidence in the record that Laurel Lea refused to make the repairs. However, the trial court found that Laurel Lea did “neglect” to make these necessary repairs. It is uncontested that Mr. Parker informed Mr. Gianelloni of the electrical problems on the premises. Mr. Gianelloni testified that Mr. Parker called him approximately three times concerning the electrical problems. He stated that he attempted to contact Mr. Buck Langlois, his electrical contractor, a number of times to request that he investigate the problems. Finally, Mr. Gianelloni authorized Mr. Stevenson to use his own electrician since Mr. Langlois never showed up. Mr. Gianelloni stated that he requested Mr. Stevenson to obtain an estimate for the repairs and then to call him for his authorization. He acknowledged the three calls he received from Mr. Parker were over a span of two to three weeks.
Mr. Langlois testified that he went to Micro Mall the same day he was contacted by Mr. Gianelloni. Mr. Langlois inspected the lights and informed a representative of Micro Mall that he would be back to fix the lights. He then informed Mr. Gianelloni that he was snowed under with other jobs, but that he would get to it as soon as possible. Mr. Langlois stated it was over three weeks before he got back in touch with Mr. Gianelloni.
Carl Stevenson testified that he recalled a personal conversation at Micro Mall with Mr. Gianelloni, but no telephone conversations. He stated that Mr. Gianelloni had never asked him to obtain an estimate nor was he asked to get back to Mr. Gianelloni. Mr. Stevenson testified that he was never advised that Mr. Gianelloni’s electrician, Mr. Langlois would come and inspect the problem and that Mr. Gianelloni was of the opinion that it was Micro Mall’s responsibility, as a tenant under the terms of the lease, to make the repairs. Mr. Stevenson testified that the lights continued to go out *825 one by one over a period of two months or more prior to his conversation with Mr. Gianelloni and that another month went by before he had the six ballasts replaced.
Regardless of how Mr. Gianelloni was contacted, he had at least one month to replace the six ballasts. Considering the fact that the repairs only took three hours, we conclude the trial court was not manifestly erroneous in its factual finding that Laurel Lea “neglected” to make these necessary repairs. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
For the foregoing reasons the judgment of the trial court is affirmed. All costs are to be borne by Laurel Lea.
AFFIRMED.